UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ZIMMER US INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.: 3:16-CV-8 |
| | ) | |
| TROY MIRE, | ) | |
| | ) | |
| Defendant. | ) | |

# OPINION AND ORDER

This matter is before the court on the Motion to Dismiss Count I of Plaintiff's Complaint and memorandum in support filed by the Defendant, Troy Mire, on March 8, 2016, along with a supporting memorandum (DE 6 and 7). The Plaintiff, Zimmer US Inc., filed a response in opposition to the motion on April 8, 2016 (DE 11), and Mire filed a reply brief on April 15, 2016 (DE 12). For the reasons discussed below, the motion is DENIED.

## BACKGROUND

Zimmer hired Mire as a sales representative on August 1, 2013. Complaint, p. 2. Zimmer manufactures and sells "orthopedic implants and devices and related products, services and supplies." *Id*. Zimmer's Complaint states that "Mire was retained by Zimmer to market and sell all Zimmer products, including reconstructive products and trauma products . . . for certain accounts in Deridder, Leesville and Alexandria, Louisiana." *Id*., p. 3. According to the company, all Zimmer sales representatives "are bound by agreements[,]" *id*., p. 2, meaning they sign written employment contracts. Mire signed a "Confidentiality, Non-Competition and Non-Solicitation Agreement for Sales Managers and Representatives . . . ." *Id*., p. 3; Exh. 1. It is this contract that Zimmer claims Mire breached. Zimmer states that "[o]n or about October 2, 2015,

Mire's relationship with Zimmer ended." *Id.*, p. 5. As this lawsuit indicates, the relationship did not end amicably. That is because Zimmer accuses Mire of taking "certain confidential and proprietary Zimmer information with him, including client names and addresses, and Zimmer's pricing information." *Id.*, p. 5. As if that weren't bad enough, Mire then "became employed as an independent sales representative with Smith & Nephew, a medical equipment manufacturer that directly competes with Zimmer." *Id.* This means that "Mire is currently marketing and selling Smith & Nephew's products in direct competition with Zimmer in the Restricted Geographic Area." *Id.* (It is the phrase "Restricted Geographic Area" that is at issue in the present motion to dismiss, as discussed below.) Zimmer claims that Mire violated his non-compete agreement when be began his employment with Smith & Nephew, since he "began contacting an unknown number of Zimmer's customers, and began soliciting the transfer of their business to Smith & Nephew." *Id.* The crux of the Complaint is summarized in Zimmer's allegation that "[p]rior to and/or since the termination of his relationship with Zimmer, Mire . . . has . . . attempted to wrongfully convert Zimmer's confidential information and to divert Zimmer's customers to Smith & Nephew." *Id.* Based on these allegations, Zimmer asserts a breach of contract claim against Mire in Count I of its Complaint. *Id.*, p. 6.[1]

Mire claims it ain't so. In his motion to dismiss Count I, Mire responds to Zimmer's allegations by arguing that no valid non-compete agreement was ever formed. More specifically, Mire contends that "[s]ince the restrictive covenants at issue here contain [a] geographic limitation . . . and since no Restricted Geographic Territory was assigned, Count I of the

---

[1] Zimmer also asserts claims for "unfair competition and [interference] with prospective business advantage" (Count II) and "breach of fiduciary duty" (Count III). Complaint, pp. 6-7. Only the breach of contract claim set forth in Count I of the Complaint is at issue here.

Complaint should be dismissed." Defendant's Memorandum (DE 7), p. 1. Mire elaborates as follows:

> "Restricted Geographic Area" is a defined term in Section 7(a)(4) of the Noncompetition Agreement and means, specifically, "any geographic territory assigned to Employee during Employee's last two years of employment with [Zimmer]." . . . Zimmer did not assign Mire a geographic territory at any time. . . . The restrictive covenants that Zimmer alleges that Mire breached have no applicability unless and until a geographic territory is assigned to Mire. Since no geographic territory was ever assigned, no binding restrictive covenants exist; and Mire could not have breached.

*Id*., p. 3. For this reason, and because "Indiana law disfavors noncompetition agreements[,]" and also because "[n]oncompetition agreements are strictly construed against the employer[,]" Mire moves the court to dismiss Count I of Zimmer's Complaint. *Id*., pp. 3-4.

The parties do not dispute that the terms of the noncompetition agreement apply to a limited geographic region, or that Section 7(a)(4) of the agreement contains the definition of "Restricted Geographic Area" quoted above. *See* Agreement (DE 1-1), p. 5. It also cannot be disputed that the agreement itself makes no reference to a specific "restricted geographic area" that applied to Mire. Because the agreement is silent on this point, Mire contends, the covenants contained therein are inapplicable and cannot form the basis for a breach of contract claim.

Zimmer contends that Mire's "argument misses the mark because, as alleged in the Complaint, Mire was assigned accounts in the geographic areas of Deridder, Leesville and Alexandria, Louisiana. . . . Moreover, the Motion's premise that a geographic territory must be assigned in the agreement is flawed. Under Indiana law, a geographic territory does not need to be specifically identified or included in an agreement to be enforceable." Plaintiff's Response, p. 2.

## STANDARD OF REVIEW

Mire brings his motion to dismiss under Fed.R.Civ.P. 12(b)(6). Rule 12(b)(6) allows a defendant to move to dismiss a complaint, or any portion thereof, that fails to "state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.,* 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 556).

## DISCUSSION

The basic principles of Indiana law regarding noncompetition agreements are well-established:

> Indiana courts have generally recognized and respected the freedom to contract. *Pathfinder Commc'ns Corp. v. Macy*, 795 N.E.2d 1103, 1109 (Ind.Ct.App. 2003). However, covenants to not compete are in restraint of trade and are not favored by the law. *Id.* Noncompetition agreements are strictly construed against the employer and are enforced only if reasonable. *Id.* Covenants must be reasonable

4

with respect to the legitimate interests of the employer, restrictions on the
employee, and the public interest. *Id.*

*Nightingale Home Healthcare, Inc. v. Helmuth*, 15 N.E.3d 1080, 1083 (Ind.Ct.App. 2014). The court in *Nightingale* also explained as follows:

> A non-compete agreement is a quintessential contract and thus the traditional rules of contract interpretation apply. As such, a contract is ambiguous only if reasonable persons would differ as to the meaning of its terms. *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002). In interpreting an unambiguous contract, a court gives effect to the parties' intentions as expressed in the four corners of the instrument, and clear, plain, and unambiguous terms are conclusive of that intent. *Oxford Fin. Grp., Ltd. v. Evans*, 795 N.E.2d 1135, 1142 (Ind.Ct.App.2003). Courts may not construe clear and unambiguous provisions, nor may it add provisions not agreed upon by the parties. *Id.*

*Id.* at 1084. Restrictive covenants are generally enforceable, however, so long as the employer "'has asserted a legitimate interest that may be protected by a covenant' and 'the scope of the agreement is reasonable in terms of time, geography, and types of activity prohibited.'" Plaintiff's Response, p. 6 (quoting *Gleeson v. Preferred Sourcing, LLC*, 883 N.E.2d 164, 172 (Ind.Ct.App. 2008)).

As to the present motion to dismiss, the debate is not so much about ambiguity or the reasonableness of the scope of Zimmer's noncompetition agreement, but whether all conditions precedent have been met to effectuate certain terms of the agreement. Mire contends that the language of the agreement is clear: the restrictive covenants it contains only apply once a delineated, restrictive geographic area is assigned. Put another way, Mire argues that the designation of a specific restrictive area is a condition precedent to the applicability of the restrictive covenants. Zimmer says this argument is misplaced because "there was nothing in the Agreement that required that the geographic territory be assigned in the Agreement." *Id*. Zimmer

5

again points to the fact that its "Complaint alleges that Mire was assigned certain accounts in the geographic territory of Deridder, Leesville and Alexandria, Louisiana. . . . Mire's implication that [he] could be assigned and work on accounts within a geographic area without being 'assigned' that geographic area is semantics. The scope of the restriction (i.e. Mire's assigned accounts within his geographic territory) is easily understood and plainly expressed." *Id*. Zimmer supports this argument with a discussion of cases that hold that noncompetition agreements are enforceable even when the required geographic restriction element is not clearly defined. *Id*., pp. 7-10. This is so because the court is permitted to consider extrinsic evidence to discern the parties' intention with regard to the geographic restriction, so it can then consider whether that restriction is reasonable. *Id*., p. 7 (citing *Field v. Alexander & Alexander of Indiana, Inc.*, 53 N.E.2d 627 (Ind.Ct.App. 1987); *Seach v. Richards, Dieterle & Co.*, 439 N.E.2d 208 (Ind.Ct.App. 1982)). Zimmer also discusses the case of *Zimmer US, Inc. v. Keefer*, 2012 WL 5268550 (N.D.Ind. Oct. 23, 2012), in which, according to Zimmer, this court "analyzed the same contract language as Mire's Agreement and rejected" an argument concerning the geographic limitation after determining that the limitation was easily discernable based on extrinsic evidence (specifically, the known and named customers with whom the defendant former employee had done business). Zimmer maintains that the same conclusion should apply here. Mire argues that *Keefer* is distinguishable since that case was before the court on a preliminary injunction motion and so Judge DeGuilio applied a preliminary injunction standard of review when concluding that a known customer list could effectively replace, or substitute for, the restricted geographic area requirement in Zimmer's standard noncompetition agreement. Defendant's Reply, p. 1. Mire concedes that the *Keefer* case, as well as *Field* and *Seach*, accurately state Indiana law, but says

6

that doesn't matter in the context of this case. As Mire states it:

> Zimmer explains that it is not required to limit its restrictive covenants by geography if its restrictive covenants contain customer-based restrictions instead. *That is an accurate depiction of Indiana law*. . . . In the typical case involving a noncompetition agreement, the plaintiff company requests a preliminary injunction, then an evidentiary hearing is conducted, then, among other things, the court determines whether the restrictive covenants in the noncompetition agreement are "reasonable in terms of time, geography, and types of activities prohibited." . . . In fact, that is precisely what occurred in all the cases relied upon by Zimmer in its response brief.

*Id*., p. 2 (italics added) (citations omitted). Since Mire is not challenging the reasonableness of the restrictive covenants, arguing instead that they never sprang to life in the first place, he claims that Zimmer's argument is misplaced and the cases it cites (including *Field*, *Seach*, and *Keefer*) are inapplicable. In other words, according to Mire, the fact that case law supports Zimmer's argument that a customer-based restrictive covenant is as valid as a delineated geographic restriction is irrelevant to the present case. The point remains, argues Mire, that "Zimmer, as the drafter of the noncompetition agreement, only constrained Mire from competing or soliciting 'within the Restricted Geographic Area,' i.e., within 'any geographic territory assigned to [Mire].'" *Id*., p. 3. Since it is undisputed that the Agreement did not make any such assignment, the fact that a restricted geographic area can be readily determined using the customers with whom Mire worked during the relevant time period is not pertinent, or so argues Mire. As he puts it, "[w]hether or not Indiana law requires a geographic limitation in order to have an enforceable restrictive covenant in the abstract is irrelevant to Mire's motion to dismiss–the express terms of the Zimmer noncompetition agreement require such a limitation." *Id*.

Zimmer argues that the Agreement at issue "clearly manifests Zimmer's and Mire's intent that Mire be prohibited from soliciting his former Zimmer customers on behalf of a competitor

7

for one year. Both the definition of 'Customer' and the definition of 'Restricted Geographic Area' restrict Mire only as to the Customers with whom he had involvement during his last two years with Zimmer." *Id*., p. 11. The restrictive covenants are therefore enforceable, argues Zimmer, since "[e]nforcement of this restrictive covenant based on [Mire's] assignment of certain accounts in the geographic territory of Deridder, Leesville and Alexandria, Louisiana[,] is thus consistent with well settled Indiana law." *Id*. (citations omitted). Finally, Zimmer argues alternatively that this court should enforce the Agreement by employing the "'blue-pencil' process" in order to "give[] effect to the parties' reasonable intentions[.]" *Id*., p. 12 (citations omitted).[2] This is really just another way of stating the premise of Zimmer's opposition to the motion to dismiss–that both the company and Mire intended that the restrictive covenants in the Agreement would apply to customers in a limited area, and that area is the one in Louisiana where Mire worked.

In his reply brief, Mire doubles down on his argument "that Zimmer failed to fulfill a requirement of its own written agreement and, therefore, cannot enforce Mire's noncompetition agreement." Defendant's Reply, p. 1. He argues that "[t]he law mandates the strict construction of any restrictive covenant; Zimmer does not get to argue about how its conduct could fit under

---

[2] Zimmer is correct that courts in Indiana may utilize the "blue-pencil" process to give effect to contractual terms intended by the parties. "If practicable, unreasonable restraints are rendered reasonable by scratching out any offensive clauses to give effect to the parties' intentions." *Smart Corp. v. Grider*, 650 N.E.2d 80, 84 (Ind.Ct.App. 1995) (citing *Seach*, 439 N.E.2d at 215). But this alternative does not apply here, since the reasonableness of the terms in the agreement are not being challenged; instead, Mire argues that they are inapplicable from the get go. It is not possible for the court to employ the "blue-pencil" doctrine in this instance, since it is the intent of the parties, not the reasonableness of the provisions, that is really at issue.

the terms of the restrictive covenant. If Zimmer's conduct does not fit under the precise language it chose to use [in the Agreement], then its restrictive covenant is not enforceable." *Id.*, p. 2. Mire argues that "Zimmer specifically used the term 'any geographic territory *assigned* to Employee' and since a geographic territory was never 'assigned' to Mire, the restrictive covenants fail and the breach of contract claim should be dismissed." *Id.*, p. 5 (italics added).

This brings us to the real crux of the debate, which has more to do with the word "assigned" than it does with the phrase "restrictive geographic area." Mire takes issue with the fact that Zimmer uses the word "assigned" in its brief when referring to the Louisiana territory in which Mire worked and/or the customers with whom he had contact within the last two years of his tenure at Zimmer. Defendant's Reply, p. 4, n. 3. Mire points out that Zimmer states in its brief (citing its Complaint) that it "'assigned' certain accounts in a 'geographic territory' to Mire. Neither of these statements is true. The complaint only alleges that 'Mire marketed and sold Zimmer products for certain accounts in Deridder, Leesville and Alexandria, Louisiana.' This allegation does not identify the 'accounts,' but more importantly it does not use any form of the word 'assign,' which is the requirement found in Section 7(a)(4) of the noncompetition agreement." *Id*. Zimmer does indeed use the word "assigned" in its brief (and not in its Complaint), but it is clear, as Mire contends, that no formal or official assignment was ever made (or at least there is no evidence of it in the sparse record before the court). The court presumes that Zimmer would concede this point (otherwise we wouldn't be going through the present exercise) and agree that its use of the term "assigned" is a bit misleading insofar that it implies that a specific restricted geographic area was officially for formally assigned to Mire. It is likely, however, that Zimmer was using the word "assigned" in a more generic sense, to support its

9

argument that the restricted geographic area to which the covenants apply was "assigned" by default, or by the parties' intent. That is, since the restricted geographic area designated to Mire consisted of any customers with whom he had contact in the last two years of his employment with Zimmer in the geographic region in Louisiana in which he worked, it was essentially "assigned" to him even though this was not done in the agreement itself or apparently by any supplemental agreement.

So the issue before the court, rephrased slightly, is this: does the fact that the Agreement is silent on the issue of an *assigned* restricted geographic area automatically nullify the restrictive covenants? The answer to that question is no. The court understands Mire's position that whether the geographic limitation can be easily determined or not isn't the point–the point is that no such limitation was imposed, at least not in the Agreement itself and apparently not in any other official or formal way. But that does not end the ball game, as Mire claims. Nor does Zimmer's argument–that all conditions precedent to forming a binding noncompetition agreement were met since the geographic limitation can be ascertained–carry the day.

The reason Mire's motion is before the court is because the word "assigned," unlike so many other words and phrases, is not defined in the noncompetition agreement, and there is obviously room for debate about that definition, depending on whether one accepts Mire's invitation to apply rules of strict contract interpretation and to strictly construe all terms against Zimmer (the drafter and employer), or Zimmer's invitation to find that all conditions precedent were met and Mire's motion is based on nothing more than a hyper-technicality or semantical debate. But this is getting ahead of the game altogether. The issue of whether all conditions precedent to effectuating a binding noncompetition agreement is not one that can be resolved on

10

the present record, nor does it need to be. At the end of the day, the only issue before the court is whether Zimmer's Complaint is sufficient to state a cognizable claim for breach of contract under a Rule 12(b(6) standard of review. The answer to that question is yes.

Zimmer's Complaint, as it relates to the Count I breach of contract claim, pleads sufficient facts to survive a Rule 12(b)(6) challenge. Perhaps it would not survive a motion for summary judgment, since the record would be more developed and would presumably include evidence (especially deposition testimony) of the parties' intentions with regard to the "assignment" of a "restricted geographic limitation," but it does survive the motion to dismiss.[3] Zimmer's Complaint includes allegations that Mire, after his separation from Zimmer, solicited or attempted to solicit business with certain Zimmer customers in the Louisiana area in which he had served as a Zimmer representative. The facts and allegations contained in the Complaint are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Mire is correct that a Rule 12(b)(6) motion can be used "to test the law of the claim, not the factual support." Defendant's Memorandum, p. 2 (citing *Moore v. Univ. of Notre Dame*, 968 F.Supp. 1330, 1333 (N.D.Ind. 1997)); *see also*, *Waste, Inc. Cost Recovery Grp. v. Allis Chalmers Corp.*, 51 F. Supp. 2d 936, 939 (N.D.Ind. 1999) ("A Rule 12(b)(6) motion to dismiss is properly utilized to test the legal sufficiency of the complaint or, stated differently, to test the law of the claim, not the facts that support it.") (citations omitted). But it is also true that a motion to dismiss should be denied if the record is not developed enough to permit the court to resolve an issue presented, i.e., if an issue is premature. *See Deschepper v. Midwest Wine and Spirits, Inc.*,

---

[3] The court is not implying that Mire should revisit this issue in a motion for summary judgment or that his argument would have a greater chance of success at that stage. The point is that the issue cannot be resolved at this point in the litigation.

84 F.Supp.3d 767, 777 (N.D.Ill. 2015) ("It is premature to decide this issue at the motion to dismiss stage without the benefit of a fully developed record."); *Life Center, Inc. v. City of Elgin, Ill.*, 993 F.Supp.2d 863, 871 (N.D.Ill. 2013) (denying motion to dismiss on basis that "[t]here are factual issues that are premature to resolve at this juncture without discovery."); *Browning v. Flexsteel Industries, Inc.*, 959 F.Supp.2d 1134, 1152-53 (N.D.Ind. 2013) ("premature to decide [the] issue on the limited record available to the Court on a motion to dismiss under Rule 12(b)(6)."). Also, the court notes that resolution of this issue–whether a specific territory was "assigned" to Mire, thereby invoking the restrictive covenants–would involve an assessment of evidence (like deposition testimony) to determine the parties' intent when they signed the agreement. This, in turn, might entail credibility determinations, which the court obviously cannot make now or at the summary judgment stage. Finally, applying the established Rule 12(b)(6) standard of review, the court accepts as true all factual allegations in the complaint and draws all inferences in favor of Zimmer. *Bielanski*, 550 F.3d at 633. The court concludes that the Complaint alleges facts that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. For these reasons, Mire's motion is denied.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss Count I of Plaintiff's Complaint filed by Defendant Troy Mire (DE 6) is DENIED.

Date: May 27, 2016.

                                                    William C. Lee
                                                  William C. Lee, Judge
                                               United States District Court
                                               Northern District of Indiana